**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **ALFREDO LOPEZ**, on behalf of himself and all other employees similarly situated, known and unknown,<br><br>     Plaintiff,<br>  v.<br><br>**SAMAHA INVESTMENTS, INC.**, an Illinois corporation, **SAM & H, INC.**, an Illinois corporation, **SAMIH HEJJA**, individually, and **MAHA KHASHAN**, individually,<br><br>    Defendants. | Civil Action<br><br><br><br><br>No.<br><br><br><br><br><br><br>JURY DEMAND |

**COMPLAINT**

By and through his attorneys of record and on behalf of himself and all other similarly situated employees, known and unknown, the plaintiff, ALFREDO LOPEZ (the "Plaintiff"), hereby complains of the defendants, SAMAHA INVESTMENTS, INC., an Illinois corporation, SAM & H, INC., an Illinois corporation, SAMIH HEJJA, individually, and MAHA KHASHAN, individually, (collectively the "Defendants"). Pleading hypothetically and in the alternative, the Plaintiff alleges as follows:

**I.  INTRODUCTION**

1. This action arises under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, as a result of the Defendants' failure to pay the Plaintiff and other similarly situated employees of the Defendants (the "Collective Class") time and one-half compensation for the overtime (in excess of 40 in any given week) hours they worked. In Count I, the Plaintiff brings a claim pursuant to Section 216(b) of the FLSA.

2.      In Count II, the Plaintiff brings a supplemental claim under the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et seq*.

## II.      THE PARTIES

3.      The Plaintiff is an individual domiciled in the State of Illinois, and resides within this judicial district.

4.      The following defendants, are individuals who are domiciled in Illinois, and who reside within the Northern District of Illinois: a) SAMIH HEJJA; and b) MAHA KHASHAN.

5.      The defendant, SAMAHA INVESTMENTS, INC. ("SINVI"), is an Illinois corporation that: a) has its registered office at or near 13200 Taylor Street, Plainfield, IL 60543; and b) has its principal place of business at or near 1555 U.S. Route 34, Oswego, IL 60543.

6.      The defendant, SAM & H, INC. ("SHI"), is an Illinois corporation that: a) has its registered office at or near 23846 135th Street, Plainfield, IL 60544; and b) has its principal place of business at or near 1559 U.S. Route 34, Oswego, IL 60543.

7.      At all times relevant to this action, the Defendants owed/own and operated/operate automotive repair shops doing business under the name "Tuffy Auto" at or near: a) 23846 W. 135th Street, Plainfield, IL 60544; b) 1555 U.S. Route 34, Oswego, IL 60543; and c) other locations within Illinois.

8.      Upon information and belief: a) SINVI was and is primarily associated with the Tuffy Auto shop located at 1555 U.S. Route 34, Oswego, IL 60543; and b) SHI was and is primarily associated with the Tuffy Auto shop located at 23846 W. 135th Street, Plainfield, IL 60544.

2

9.    The Defendants hired the Plaintiff in about February, 2015; and the Defendants allowed the Plaintiff to perform work at both of the Tuffy Auto shops described in the preceding paragraph.

10.    At all times relevant to this action, SAMIH HEJJA:

   a.  was and is a corporate officer of SINVI;
   b.  held and holds an ownership interest in SINVI;
   c.  exercised and exercises significant control over SINVI's day-to-day affairs;
   d.  was and is a member of SINVI's management or control group;
   e.  had and has the power to hire and fire SINVI's employees, including the Plaintiff;
   f.  did in fact hire the Plaintiff in about February, 2015;
   g.  had and has the power to set the manner and method of compensation (*i.e.* by check, in cash, by the hour, on salary, etc.), and the rates of pay, for SINVI's employees, including the Plaintiff;
   h.  did in fact set the manner and method of the Plaintiff's compensation;
   i.  had and has the power to set the work schedules of SINVI's employees, including the Plaintiff; and
   j.  did in fact set the work schedule of the Plaintiff.

11.    At all times relevant to this action, MAHA KHASHAN:

   a.  was and is a corporate officer of SINVI;
   b.  upon information and belief, held and holds an ownership interest in SINVI;
   c.  exercised and exercises significant control over SINVI's day-to-day affairs;
   d.  was and is a member of SINVI's management or control group;
   e.  had and has the power to hire and fire SINVI's employees, including the Plaintiff;
   f.  had and has the power to set the manner and method of compensation (*i.e.* by check, in cash, by the hour, on salary, etc.), and the rates of pay, for SINVI's employees, including the Plaintiff;
   g.  had and has the power to set the work schedules of SINVI's employees, including the Plaintiff; and

12.    At all times relevant to this action, SAMIH HEJJA:

   a.  was and is a corporate officer of SHI;
   b.  held and holds an ownership interest in SHI;
   c.  exercised and exercises significant control over SHI's day-to-day affairs;
   d.  was and is a member of SHI's management or control group;

    e.  had and has the power to hire and fire SHI's employees, including the Plaintiff;

    f.  did in fact hire the Plaintiff in about February, 2015;

    g.  had and has the power to set the manner and method of compensation (*i.e.* by check, in cash, by the hour, on salary, etc.), and the rates of pay, for SHI's employees, including the Plaintiff;

    h.  did in fact set the manner and method of the Plaintiff's compensation;

    i.  had and has the power to set the work schedules of SHI's employees, including the Plaintiff; and

    j.  did in fact set the work schedule of the Plaintiff.

13.    At all times relevant to this action, MAHA KHASHAN:

    a.  was and is a corporate officer of SHI;

    b.  upon information and belief, held and holds an ownership interest in SHI;

    c.  exercised and exercises significant control over SHI's day-to-day affairs;

    d.  was and is a member of SHI's management or control group;

    e.  had and has the power to hire and fire SHI's employees, including the Plaintiff;

    f.  had and has the power to set the manner and method of compensation (*i.e.* by check, in cash, by the hour, on salary, etc.), and the rates of pay, for SHI's employees, including the Plaintiff;

    g.  had and has the power to set the work schedules of SHI's employees, including the Plaintiff.

## III.    JURISDICTION AND VENUE

14.    Federal question jurisdiction is conferred on this Court by Section 16(b) of the FLSA and 28 U.S.C. §1331.

15.    Supplemental jurisdiction over the Illinois statutory claims alleged herein is conferred on this Court by 28 U.S.C. § 1367(a).

16.    Venue is proper as the acts or omissions that gave rise to the claims alleged herein occurred within this judicial district.

17.    Further, venue is proper pursuant to 28 U.S.C. § 1391, in that both SINVI and SHI have their registered offices and principal places of business within the Northern District of Illinois.

## IV.     COLLECTIVE ACTION UNDER THE FLSA

18.     The Plaintiff brings this case as a Collective action under the FLSA on behalf of himself and the Collective Class, and in accordance with Section 16(b) of the FLSA, the Plaintiff has given written consent to bring such an action (attached as **Exhibit A**).

## V.     GENERAL ALLEGATIONS

19.     At all times relevant to this action, the Defendants, and each of them, were the Plaintiff's "employer" within the meaning of Section 3(a) and (d) of the FLSA in that the Defendants act/acted directly or indirectly in the interest of the "employer" in relation to the employee plaintiffs represented herein, and are therefore jointly and severally liable for the unpaid wages and other relief sought herein.

20.     At all times relevant to this action, the Defendants, and each of them, were the Plaintiff's "employer" within the meaning of Section 3(c) of the IMWL in that the Defendants acted directly or indirectly in the interest of the "employer" in relation to the employee plaintiffs represented herein, and are therefore jointly and severally liable for the unpaid wages and other relief sought herein.

21.     At all times relevant to this action, the Plaintiff was an "employee" of the Defendants within the meaning of Section 3(e)(1) of the FLSA.

22.     At all times relevant to this action, the members of the Collective Class are/were "employees" of the Defendants within the meaning of Section 3(e)(1) of the FLSA.

23.     At all times relevant to this action, the Plaintiff was an "employee" of the Defendants within the meaning of Section 3(d) of the IMWL.

24.     SINVI had gross receipts in excess of $500,000.00 in: a) 2014; b) 2015; c) 2016; d) and e) 2017.

25.     SHI had gross receipts in excess of $500,000.00 in: a) 2014; b) 2015; c) 2016; d) and e) 2017.

26.     During the course of his employment by the Defendants, the Plaintiff handled/handles goods that moved in interstate commerce including but not limited to motor oil and other petroleum products.

27.     During the course of their employment by the Defendants, the Collective Class members handled/handle goods that moved in interstate commerce including but not limited to motor oil and other petroleum products.

28.     During the course of his employment by the Defendants, the Plaintiff processed/processes plastic bank card payments from the Defendants' customers; and, in doing so, caused/causes digitized financial information and money to be transmitted or wired across state lines.

29.     During the course of their employment by the Defendants, the Collective Class members processed/process plastic bank card payments from the Defendants' customers; and, in doing so, caused/cause digitized financial information and money to be transmitted or wired across state lines.

30.     The Plaintiff was employed by the Defendants from about February, 2015 through the present.

31.     The Defendants intentionally misclassified the Plaintiff and the Collective Class members as an exempt employees in order to avoid paying them overtime compensation at the rate of one and one-half times their regular hourly rates.

32.     Specifically, the Defendants appear to have misclassified the Plaintiff as exempt under the "retail service commission exemption" set forth in 29 U.S.C. 207(i).

33.     During the course of the Plaintiff's employment by the Defendants, the Defendants paid the Plaintiff a fixed salary of $750.00 per week plus a commission equal to 6% of gross sales above a floor of $12,500.00 each week.

34.     The retail service commission exemption is not applicable to the Plaintiff because, among other things, at no time during the course of the Plaintiff's employment by the Defendants did the commission ever comprise more than half of the Plaintiff's total compensation.

35.     From about February, 2015 through the present, the Defendants paid the Plaintiff a fixed weekly salary of $750.00, plus the 6% bonus described above.

36.     Because of the length of time that the Plaintiff was paid a fixed weekly salary, there was a "clear mutual understanding of the parties that the fixed salary [was] compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period."  29 CFR § 778.114(a).

37.     Because "the salary in such a situation is intended to compensate the employee at straight time rates for whatever hours are worked in the workweek, the regular rate of the employee will vary from week to week and is determined by dividing the number of hours worked in the workweek into the amount of the salary to obtain the applicable hourly rate for the week."  *Id*.

38.     29 C.F.R. 788.117 says:

> Commissions (whether based on a percentage of total sales or of sales in excess of a specified amount, or on some other formula) are payments for hours worked and must be included in the regular rate. This is true regardless of whether the commission is the sole source of the employee's compensation or is paid in addition to a guaranteed salary or hourly rate, or on some other basis, and regardless of the

method, frequency, or regularity of computing, allocating and paying the commission. It does not matter whether the commission earnings are computed daily, weekly, biweekly, semimonthly, monthly, or at some other interval. The fact that the commission is paid on a basis other than weekly, and that payment is delayed for a time past the employee's normal pay day or pay period, does not excuse the employer from including this payment in the employee's regular rate.

(parenthetical in original).

39.     29 C.F.R. 788.118 says:

When the commission is paid on a weekly basis, it is added to the employee's other earnings for that workweek (except overtime premiums and other payments excluded as provided in section 7(e) of the Act), and the total is divided by the total number of hours worked in the workweek to obtain the employee's regular hourly rate for the particular workweek. The employee must then be paid extra compensation at one-half of that rate for each hour worked in excess of the applicable maximum hours standard.

(parenthetical in original).

40.     During the course of his employment by the Defendants, the number of hours the Plaintiff actually worked fluctuated slightly from week to week between 63 and 65; but the number of hours was rarely (if ever) fewer than 63.

41.     The Defendants listed "40 hours" on the Plaintiff's weekly pay stubs even though they knew that the Plaintiff typically worked more than 63 hours per week.

42.     The Defendants were and are under a duty imposed by the FLSA, 29 U.S.C. 211(c), and other statutory and regulatory provisions, to maintain and preserve accurate payroll and other employment records; but, upon information and belief, the Defendants intentionally failed to do so in that, among other things, they failed to accurately list the number of hours the Plaintiff worked each week on his pay stubs, failed to accurately track and record the number of hours he worked each week, and misclassified the Plaintiff as an exempt employee.

43.     Where an employer fails to keep accurate payroll records records, "Reasonable approximations . . . are appropriate." *Urnikis-Negro v. Am. Family Prop. Servs.*, 616 F.3d 665, 669 n.2 (7th Cir. Ill. 2010) (citations omitted).

44.     During the Plaintiff's employment by the Defendants, the Defendants allowed the Plaintiff to work an average of about 63 hours per week.

45.     During the Plaintiff's employment by the Defendants, in addition to his fixed, weekly salary of $750.00, he received an average, weekly commission of $137.00, making his average weekly compensation $887.00.

46.     It follows that the Plaintiff's regular hourly rate was on average $14.08 ($887.00 / 63 = $14.08).

47.      The FLSA required the Defendants to pay the Plaintiff for his overtime (in excess of 40 in a given week) hours "at a rate not less than one and one-half times the regular rate at which [he was] employed."  29 USCS § 207.

48.     The Defendants should have paid the Plaintiff an overtime premium of $7.04 ($14.08 / 2 = $7.04 for each overtime hour that he worked, but they did not.  In this manner the Defendants violated the FLSA's maximum hour provisions.  It follows that the Defendants shorted the Plaintiff an average of $161.92 per week ($7.04 x 23 overtime hours = $161.92).

49.     Upon information and belief, the Defendants shorted the compensation of the Collective Class members in the same manner in which they shorted the Plaintiff's compensation; and the Defendants continue these unlawful payroll practices, relative to the Plaintiff and the Collective Class members, through the present day.

## COUNT I
### (Violation of the FLSA)

50.     The Plaintiff re-alleges the foregoing paragraphs.

51.     Among other ways, the Defendants violated the FLSA by:

    a.  failing to pay the Plaintiff at a rate not less than one and one-half times his regular hourly rate for the overtime hours he worked;
    b.  failing to accurately list the number of hours the Plaintiff worked each week on his check stubs;
    c.  failing to accurately track and record the number of hours the Plaintiff worked each week; and
    d.  failing to hang and display a poster in a prominent location accessible to employees, which poster would have informed the Plaintiff of his rights under the FLSA.[1]

52.     Among other ways, the Defendants also violated the FLSA by:

    a.  failing to pay the Collective Class members at a rate not less than one and one-half times their regular hourly rates for the overtime hours they worked;
    b.  failing to accurately list the number of hours the Collective Class members worked each week on their check stubs;
    c.  failing to accurately track and record the number of hours the Collective Class members worked each week; and
    d.  failing to hang and display a poster in a prominent location accessible to employees, which poster would have informed the Collective Class of their rights under the FLSA.

53.     The Defendants' violation of the FLSA was willful in that the Defendants were aware or should have been aware of their obligations under the FLSA, but nevertheless attempted to circumvent its provisions.

54.     The Defendants failed to take affirmative steps to ascertain their obligations under the FLSA.

---

[1] As a result, the statute/s of limitation applicable to the Plaintiff's claims were tolled under the doctrine announced in *Bonham v. Dresser Industries, Inc.*, 569 F.2d 187 (3d Cir. 1978) (followed by *Cortez v. Medina's Landscaping*, 148 Lab. Cas. (CCH) P34, 743, 2002 U.S. Dist. LEXIS 18831 (N.D. Ill. 2002) (Gottschall, J.); followed by *Chavez v. Don Stoltzner Mason Contr., Inc.*, 2010 U.S. Dist. LEXIS 33289 (N.D. Ill. 2010) (Aspen, J.))

55.     As a direct and proximate result of the Defendants' violation of the FLSA, the Plaintiff was damaged in that, among other things, he suffered pecuniary loss including but not limited to unpaid overtime compensation.

WHEREFORE the Plaintiff, on behalf of himself and the Collective Class, prays for judgment in his favor and against the Defendants, and each of them, and for the following relief:

A.  damages in an amount equal to the unpaid overtime compensation due and owing to the plaintiffs for each hour the plaintiffs worked in excess of 40 in any given week, but for which the Defendants failed to pay the plaintiffs at rates not less than one and one-half times their respective regular, hourly rates (in no case less than one and one-half times the IMWL's mandatory minimum rate);

B.  statutory liquidated damages as allowed by the FLSA;

C.  interest on all amounts awarded;

D.  attorneys' fees, together with costs of suit and collection; and

E.  such further relief as may be fair and just in the premises.

## COUNT II
### (Violation of the IMWL)

56.     The Plaintiff re-alleges the foregoing paragraphs.

57.     Among other ways, the Defendants violated the IMWL by:

a.  failing to pay the Plaintiff at a rate not less than one and one-half times his regular hourly rate for the overtime hours he worked;
b.  failing to accurately list the number of hours the Plaintiff worked each week on his check stubs;
c.  failing to accurately track and record the number of hours the Plaintiff worked each week; and
d.  failing to hang and display a poster in a prominent location accessible to employees, which poster would have informed the Plaintiff of his rights under the IMWL.

58.     The Defendants were aware or should have been aware of their obligations under the IMWL, but nevertheless attempted to circumvent its provisions.

59.     The Defendants failed to take affirmative steps to ascertain their obligations under the IMWL.

60.     As a direct and proximate result of the Defendants' violation of the IMWL, the Plaintiff was damaged in that, among other things, he suffered pecuniary loss including but not limited to unpaid overtime compensation.

WHEREFORE the Plaintiff prays for judgment in his favor and against the Defendants, and each of them, and for the following relief:

A.  damages in an amount equal to the unpaid overtime compensation due and owing to the Plaintiff for each hour the Plaintiff worked in excess of 40 in any given week, but for which the Defendants failed to pay the Plaintiff at a rate not less than one and one-half times his regular, hourly rate (in no case less than one and one-half times the IMWL's mandatory minimum rate);

B.  statutory punitive damages as allowed by the IMWL;

C.  interest on all amounts awarded;

D.  attorneys' fees, together with costs of suit and collection; and

E.  such further relief as may be fair and just in the premises.

**JURY DEMAND**

The Plaintiff demands a trial by jury of all issues set forth herein that are capable of being tried by a jury.

Paul Luka                                          Respectfully submitted,
MENDOZA LAW, P.C.
120 S. State Street, Suite 400          /s/Paul Luka
Chicago, IL 60603                           One of the Plaintiff's Attorneys
(312) 508-6010
paul@alexmendozalaw.com

# EXHIBIT
# A

## CONSENT TO BE A PARTY PLAINTIFF

The undersigned hereby authorizes and engages Mendoza Law, P.C. to pursue his/her claims for unpaid wages, and other relief, against Samaha Investments, Inc., Sam & H, Inc., Samih Hejja, Maha Khashan, and any other person/s who may have employed him/her in conjunction with said person/s (collectively the "Employers"), and by the signature below the undersigned hereby consents to be a party plaintiff in a lawsuit brought against the Employers on behalf of him/herself and all other similarly situated employees, known and unknown, pursuant to 29 U.S.C. 216(b).

_____
Signature

_____
Print Name